IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| REDBIRD BUSINESS GROUP, LLC; REDBIRD BIOSCIENCE OKLAHOMA, LLC; and RB REALTYCO, LLC, | ) ) ) ) |
| Plaintiffs, | ) ) |
| vs. | ) Case No. 20-CV-98-JAR ) |
| MATTHEW HARRISON, | ) ) |
| Defendant/ Counter-Claim Plaintiff | ) ) ) |
| MARITEQ PROCESSORS | ) ) |
| Garnishee. | ) ) |

## ANSWER OF ALLEGED GARNISHEE, MARITEQ GROWERS LLC

COMES NOW Mariteq Growers LLC ("Mariteq"), by and through its counsel Brewer Attorneys & Counselors, and, pursuant to 12 O.S. §1173.3.E, respectfully submits this Answer to the Post-Judgment General Garnishment Summons filed herein by Matthew Harrison.

Mariteq Growers LLC, identified as the alleged Garnishee, disputes any "indebtedness" within the meaning of title 12 OS 1172.6 to Judgment Debtor RB RealtyCo, LLC, now known as Redbird Realty, LLC ("Realty"), and seeks a hearing and a subsequent judicial declaration (i) confirming the absence of indebtedness or alternatively, a declaration regarding the exemption of such indebtedness from execution; and (ii) confirming that any property of Realty in its possession is likewise exempt from execution. Moreover, Mariteq seeks reimbursement of the fees and costs incurred in responding to this improper proceeding, pursuant to 12 O.S. §1190.C.

1

I.     PRELIMINARY STATEMENT

Oklahoma's post-judgment garnishment statutes, codified in Title 12, establish a mechanism by which a judgment creditor may, under defined circumstances, collect on a judgment through garnishment proceedings. They confer upon a judgment creditor the right to initiate garnishment against a third party believed, in good faith, to be indebted to the judgment debtor, and impose on garnishees an obligation to respond with disclosures and, where applicable, deliver non-exempt assets or payments belonging to the judgment debtor.

When applied under appropriate circumstances, the garnishment statute serves a legitimate and sensible purpose. It ensures that a judgment creditor can pursue third-party funds or property belonging to the debtor when the garnishee actually holds liquid, accessible assets subject to execution. This statutory framework is designed to facilitate collection—not to create illusory rights or impose liabilities that, in practice, will obstruct the very goal of payment.

Here, Harrison, the judgment creditor, invokes this statutory regime against Mariteq Growers LLC ("Mariteq"), purportedly to obtain a judicial determination that Mariteq is "indebted" to Realty (the judgment debtor) and to leverage that determination to compel payment or delivery of funds or property to satisfy the judgment. However, the facts of this case do not align with the statute's purpose or logic. This is not a situation where a garnishee holds liquid, accessible, or payable assets. Instead, sworn uncontroverted testimony establishes that Mariteq is not currently paying amounts contractually due because of financial hardship and lack of profit, and that any alleged obligations are neither presently payable nor accessible as a source of recovery.

Thus, even if the Court were to deem Mariteq "indebted" within the meaning of the statute, Harrison's garnishment would secure no funds. Worse, it may preclude Harrison from later collecting his judgment in full because any garnishment of assets in Mariteq's possession would arrest the ongoing buildout of the enterprise and thus undermine—rather than advance—Harrison's

objective of getting paid. Garnishing a non-performing contractual obligation where the garnishee lacks funds defeats the statute's purpose and may lock the creditor into an uncollectible position.

The Court has the power to interpret the statute in light of its purpose and to reject its application where it does not serve the statute's remedial function. Granting the relief Harrison seeks—e.g., deeming Mariteq to be presently "indebted" in a way that would trigger further garnishment obligations—would distort the statutory scheme and undermine the result it was designed to achieve.

Accordingly, the Court should decline to find any "indebtedness" subject to garnishment under Oklahoma law on the facts presented and confirm that, in any event, the obligations and property identified by Harrison are exempt from execution due to economic realities and statutory limitations.

Moreover, given Harrison's awareness—based on prior sworn testimony—that Mariteq lacks the funds or liquidity to satisfy any judgment-related obligations, this garnishment proceeding cannot be said to rest on a good-faith belief in recoverable debt. Mariteq therefore respectfully seeks not only a determination that no non-exempt "indebtedness" exists but also reimbursement of the fees and costs incurred in responding to this improper proceeding, pursuant to 12 O.S. §1190.C.[1]

## II. PROCEDURAL HISTORY

On April 21, 2025, Mariteq Growers LLC was served with a Post-Judgment General Garnishment Summons, requiring an Answer within ten (10) days concerning alleged indebtedness

---

[1] In addition, as discussed in more detail in the two briefs attached hereto as exhibits, although Oklahoma law permits medical marijuana businesses, federal law (the CSA) classifies marijuana as a Schedule I controlled substance. The judgment Harrison seeks to enforce relates to compensation and equity interests in a cannabis business which operates solely in the marijuana industry. Enforcing the judgment would require a federal court to legitimize profits and equity stemming from federally illegal activity, which it cannot do.

or property belonging to Realty, as set forth by the Garnishment Affidavit submitted by Judgment Creditor Matthew Harrison. On May 5, 2025, the Court extended the deadline to file the Answer to May 12, 2025.

### III.     FACTUAL BACKGROUND

The Redbird enterprise constitutes a sophisticated, vertically integrated constellation of affiliated entities operating within Oklahoma's tightly regulated medical cannabis sector. Central to this structure is New Redbird Business Group, LLC ("New RBG"), a holding company controlling two primary subsidiaries: Redbird Realty, LLC ("Realty") –the judgment debtor at issue in this garnishment proceeding—and RB Bioscience Stilwell, LLC ("Bioscience"). Realty owns and operates the primary cultivation and processing infrastructure located in Stilwell, Oklahoma, while Bioscience provides operational, administrative, and consulting services to state-licensed cannabis entities.

The enterprise operates under conditions of financial and operational interdependence. Realty provides essential infrastructure, Bioscience contributes necessary administrative and operational expertise. Critical to this integrated operation are Mariteq Growers, LLC ("Mariteq Growers" or "Mariteq") –the alleged garnishee—and Mariteq Processors, LLC ("Mariteq Processors"), entities licensed under Oklahoma law to cultivate and process medical cannabis. The Mariteq entities rely heavily on Realty and Bioscience, engaging through structured contractual arrangements encompassing lease obligations, intellectual property licenses, equipment leases, and management and support services.

Mariteq also leases property from Realty.  First, pursuant to a Real Estate Lease Agreement effective as of July 1, 2020, Mariteq Growers LLC leases from Redbird Realty LLC substantial real property located near Stilwell, Oklahoma. The leased premises comprise approximately 78,508 square feet within a larger Stilwell facility of approximately 88,919 square feet, including

administrative offices, greenhouses, and warehouse facilities situated on roughly 39.95 acres of land.

Mariteq is contractually obligated to pay Realty a base monthly rent of $198,656, along with additional rent to cover a proportionate share of common area maintenance charges, real estate taxes, assessments, and other charges.

Separately, Mariteq also leases specialized cultivation and operational equipment from Realty under a Specialized Equipment Lease Agreement dated July 1, 2020. This equipment includes, but is not limited to:

- Rolling grow benches
- Advanced lighting systems, brackets, cords, and controllers
- Oscillating and wall-mount fans, including HAF fans
- HVAC systems, including multiple 30 Ton Cultiva HVAC systems
- Dehumidification systems and $CO_2$ control systems
- Fertigation equipment, including pumps and tanks
- IT and operational infrastructure including computers, laptops, monitors, printers, and network switches
- Storage and shelving units, carts, drying racks, and processing equipment

The equipment is leased with a base rent obligation of $105,514 per month, subject similarly to an agreed rent deferral period. Interest accrues on deferred equipment lease amounts at 12% per annum, compounded monthly.

Both leases reflect substantial Realty-owned assets in Mariteq's possession that are essential to Mariteq's operational capacity within the regulated cannabis industry. These assets are integral to

both ongoing and future revenue-generating operations, thus playing a critical role in determining the feasibility of garnishment and the operational viability of both Mariteq and Realty. Notwithstanding the contractual frameworks, the Mariteq entities have continuously defaulted on their financial commitments. As confirmed by deposition testimony by William Thurman, "Mariteq has never made the full rent payment" nor meaningfully addressed its mounting arrears (Thurman Dep. 97:13–98:12).

This pattern of nonpayment is rooted in profound financial distress compounded by market volatility. Thurman characterized the enterprise's financial state as "a fight every day" to maintain solvency, secure critical capital, and complete essential facilities necessary for sustainable operations and revenue generation (Thurman Dep. 73:22–74:1). The inability to finalize partially constructed facilities or fully utilize existing resources severely impairs revenue generation and inhibits Mariteq's contractual performance.

The garnishment sought by Harrison is directed toward intercompany obligations with no corresponding liquid assets. Mariteq's current liquid assets are limited. Bank account balances at the end of April 2025 equaled $1,126.67.

Consequently, garnishing illiquid assets held by Mariteq would not yield collectible assets; rather, it would disrupt ongoing operations, undermine the enterprise's delicate financial balance, and jeopardize the interests of creditors, including Harrison.

Thus, the garnishment Harrison seeks is incongruent with the statutory objectives of Oklahoma's garnishment laws, which intend efficient recovery of judgment debts rather than promoting destructive and counterproductive economic outcomes. In the present case, garnishment would merely accelerate a challenging trajectory, potentially stripping Harrison of his own potential recovery and leaving the broader creditor body similarly disadvantaged.

In addition, third parties have claims to the property at issue in the garnishment summons, as described below.

### ANSWER PURSUANT TO 12 O.S. §1173.3.E

1. Indebtedness or Property of Defendant: 12 O.S. 1173.3.E states: "When the garnishee shall be in doubt respecting any such liability or indebtedness, the garnishee may set forth all of the facts and circumstances concerning the same, and submit the question to the court." In light of the factual background set forth above, Mariteq Growers LLC states that it is "in doubt" respecting its alleged "indebtedness" to Realty as those terms are used in the statute. Mariteq acknowledges the existence of intercompany obligations to pay fees to Realty (as evidenced by the agreements attached hereto as Exhibits A and B). However, due to current economic conditions and lack of operational profits, Mariteq has been unable to make any payments otherwise contractually due. Mariteq submits that the facts and circumstances set forth herein warrant a determination by the Court that there is no "indebtedness" under the statute.

2. Claims of Setoff, Defense, Liens, or Other Claims Mariteq asserts the economic hardship detailed above as a defense against any claimed indebtedness, highlighting the lack of revenue and profitability as conditions making fulfillment of contractual obligations impossible at this time.

3. Claims of Exemption from Execution

Mariteq claims exemption based on economic hardship, requesting the Court consider these unique financial realities deeming assets at issue in this garnishment proceeding exempt from execution.

4. Claims by Other Persons: Under §12-1184, "[w]hen the answer of the garnishee shall disclose that any other person than the defendant claims the indebtedness or property in his hands, and the name and residence of such claimant, the court may, on motion, order that such claimant be interpleaded, as a defendant to the garnishee action." Mariteq believes that there are other such

persons and it will provide such information to Harrison and the Court in a supplemental submission.

5. Notice Compliance: Mariteq confirms it substantial compliance with the notice requirement under Oklahoma law. Counsel for Mariteq is counsel for Realty. Therefore, it was not necessary for Mariteq to mail the garnishment papers to Realty to effect the statutorily required notice.

## REQUEST FOR COSTS AND ATTORNEY'S FEES

Mariteq respectfully requests that the Court award attorney's fees and associated costs incurred in preparing and filing this Answer and in preparing for and participating in any hearing.

Under 12 O.S. 1171.A, a judgment creditor is "entitled to proceed by garnishment" only when he "in good faith, believes" that the alleged garnishee is "indebted to the creditor's debtor." Moreover, under 12 O.S. 1190.C, "the court may in its discretion award costs in favor or against any party."

Harrison commenced garnishment proceedings against Mariteq in the wake of several depositions where multiple witnesses testified that--due to economic realities--Mariteq has been unable to make the contractual payments to Realty. Moreover, Harrison used as an exhibit at the depositions a disclosure statement dated in 2022, which provided further evidence of the issue. Specifically, with regard to Mariteq entities, it stated:

> Attached as Exhibit C are the adjusted 2021 year end consolidated financial statements, along with Q1, Q2, and Q3 of 2022 for Mariteq Growers LLC and Mariteq Processors LLC, (as of the date of this Disclosure Statement, Mariteq Dispensaries LLC, and Redbird OKC MM Processing LLC have not yet engaged in operations) which is provided for informational purposes related to the capacity of the Tenants to pay rents and fees as required by the Intercompany Agreements (as adjusted) described more fully in Attachment 1 to this Disclosure Statement. ***The financial statements set forth below reflect adjustments to the economic terms of the intercompany agreements, as recently determined and agreed after the review and analysis of the actual financial performance***

8

*of the regulated entities. Adjustments to the economic terms were necessitated in order to meet a standard of reasonableness in light of changes to the market and actual production criteria.*[2]

Therefore, Harrison could not, in good faith, reasonably have believed that initiating garnishment proceedings against Mariteq would facilitate the collection of judgment owed by Realty. Thus, Mariteq seeks reimbursement for reasonable attorney's fees and costs pursuant to 12 O.S. §1190.C.

## PRAYER FOR RELIEF

WHEREFORE, Mariteq Growers LLC requests that, **unless Harrison dismisses this garnishment proceeding**, the Court:

1. Schedule a hearing pursuant to 12 OS 1178.2 on the questions of indebtedness, applicable exemptions, and defenses;

2. Issue a declaration finding no "indebtedness" exists to Realty or, alternatively, confirming the exemption of any alleged indebtedness;

3. Issue a declaration that any assets belonging to Realty in Mariteq's possession are likewise exempt from execution;

4. Award Mariteq reasonable attorney's fees and costs associated with defending against the garnishment proceeding;

5. Grant such further and additional relief as the Court deems just and equitable.

---

[2] Thurman Deposition transcript [Exhibit E] (evidencing Harrison's use of the exhibit throughout the deposition).

DATED: May 12, 2025                                      Respectfully Submitted,


/s/ *Svetlana Eisenberg*
Svetlana Eisenberg
Polina M. DeClue
**Brewer, Attorneys & Counselors**
1717 Main Street, Suite 5900
Dallas, TX 75201
Phone: (214) 653-4000
Fax: (214) 653-1015
sme@brewerattorneys.com
pmd@brewerattorneys.com


**ATTORNEYS FOR GARNISHEE MARITEQ PROCESSORS LLC**


## CERTIFICATE OF SERVICE

I, Polina M. DeClue, do hereby certify that on May 12, 2025, I electronically transmitted the attached document to the Clerk of this Court via email as well as to the below counsel:

| | |
|---|---|
| Adam C. Doverspike<br>Trent Shores<br>**GableGotwals**<br>1100 ONEOK Plaza<br>100 West Fifth Street<br>Tulsa, Oklahoma 74103<br>*adoverspike@gablelaw.com*<br>*tshores@gablelaw.com* | Luke A. Connelly<br>**Winston & Strawn, LLP**<br>200 Park Avenue<br>New York, New York 10166<br>*lconnelly@winston.com* |


/s/ *Polina M. DeClue*
Polina M. DeClue

APPENDIX A

Summary of certain of Realty's Agreements with Mariteq

|  | **Specialized Equipment Lease** | **Real Estate Lease** |
|---|---|---|
| Term | 3 years | 5 years (with 5 x 5-year renewals) |
| Effective Date | July 1, 2020 | July 1, 2020 |
| Monthly Rent | $105,514 | $198,656 |
| Total Deferred Rent Obligation | $105,514/month for up to 30 months | $198,656/month for up to 30 months |
| Deferred Rent Terms | Accrues 12% annual interest, due Dec 31, 2022 | Accrues 12% annual interest, due Dec 31, 2022 |
| Use | Use of specified cultivation/processing equipment | Use of licensed grow/processing facility |