# EXHIBIT C

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| Matthew Harrison, | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| | ) | |
| (1) William Thurman, | ) | |
| (2) Nimesh Patel, | ) | |
| (3) New Redbird Business Group, LLC, | ) | |
| (4) Redbird Realty, LLC, | ) | |
| (5) RBBG Development Partners, LLC, | ) | Case No. 6:24-CV-00329-JFH-GLJ |
| (6) Mariteq Growers LLC d/b/a Redbird Growers, | ) | |
| (7) Mariteq Processors LLC d/b/a Redbird Bioscience, | ) | |
| (8) Stillwell Technology Property LLC, | ) | |
| (9) RB Bioscience Stillwell LLC, | ) | |
| (10) Tactical Transportation LLC, | ) | **JURY TRIAL DEMANDED** |
| (11) Redbird OKC MM Processing LLC, | ) | |
| (12) Redbird Ventures, LLC, | ) | |
| (13) BTX7 Holdings LLC, | ) | |
| (14) DKNS LLC, | ) | |
| (15) RB Crew LLC, | ) | |
| (16) Redbird Bioscience Oklahoma, LLC, | ) | |
| (17) RB RealtyCo, LLC, and | ) | |
| (18) Redbird Business Group, LLC, | ) | |
| | ) | |
| Defendants. | ) | |

## DEFENDANTS' SUPPLEMENTAL BRIEF IN SUPPORT OF ITS MOTION TO DISMISS

Polina M. DeClue
BREWER, ATTORNEYS & COUNSELORS
1717 Main Street, Suite 5900
Dallas, Texas 75201
Phone: (212) 489-1400
Fax: (212) 751-2849
pmd@brewerattorneys.com

# TABLE OF CONTENTS

I. INTRODUCTION ............................................................................................................ 1

II. FACTUAL BACKGROUND ......................................................................................... 1

   A. The Redbird Entities' Business Is the Production, Distribution, and Sale of Cannabis ................. 1

   B. Plaintiff's Deception of Redbird ............................................................................... 3

   C. Plaintiff's Prior Judgment and Current Enforcement Efforts ...................................... 4

III. ARGUMENT AND AUTHORITIES ............................................................................ 5

   A. The Judgment is Void as a Matter of Law ................................................................. 5

      1. *A Court May Sua Sponte Vacate a Judgment That Is Void On Its Face* ................... 6

   B. The Judgment is Unenforceable in This Court Because It Violates Federal Law ......... 6

      1. *The Controlled Substances Act Prohibits the Manufacture, Distribution, and Possession of Marijuana* ........................................................................................ 7

      2. *Federal Courts Do Not Enforce Rights That Are Based on Federally Illegal Transactions* ....... 8

      3. *Plaintiff's Judgment Is Tied to Profits and Assets Derived from a Marijuana Business* .......... 11

      4. *The Judgment Enforcement Context Does Not Excuse CSA Violations* ................... 12

IV. CONCLUSION ............................................................................................................ 15

# TABLE OF AUTHORITIES

**Cases**                                                                 **Page(s)**

*1240 S. Bannock, LLC v. Siem*,
  No. 2:21-cv-00183, 2022 WL 2161386 (W.D. Mich. May 27, 2022) ................................... 12

*Alford v. Cline*,
  2017 WL 2473311 (10th Cir. June 8, 2017) (unpublished) ...................................................... 9

*Arbaugh v. Y&H Corp.*,
  546 U.S. 500 (2006) ................................................................................................................. 10

*Bart St. III v. ACC Enters., LLC*,
  No. 2:17-cv-00083-GMN-VCF, 2018 WL 4682318 (D. Nev. Sept. 27, 2018) ..................... 12

*Bart Street III v. ACC Enterprises, LLC*,
  2020 WL 1638329 (D. Nev. Apr. 1, 2020) .............................................................................. 14

*Bartch v. Barch*,
  111 F.4th 1043 (10th Cir. 2024) ...........................................................................10, 16, 17, 18

*Bassidji v. Goe*,
  413 F.3d 928 (9th Cir. 2005) ............................................................................................11, 12

*Daigle v. Shell Oil Co.*,
  972 F.2d 1527 (10th Cir. 1992) .............................................................................................. 10

*Gonzales v. Raich*,
  545 U.S. 1 (2005) .................................................................................................................... 11

*Head Kandy, LLC v. McNeill*,
  No. 23-CV-60345, 2024 WL 4502227 (S.D. Fla. Oct. 16, 2024) ....................................12, 16

*Hemphill v. Liberty Mut. Ins. Co.*,
  No. 10-861 ............................................................................................................................... 13

*Higgins v. McCrea*,
  116 U.S. 671 (1886) ................................................................................................................ 12

*Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*,
  456 U.S. 694 (1982) ................................................................................................................ 10

*J. Lilly, LLC v. Clearspan Fabric Structures International, Inc.*,
  No. 3:18-cv-01104-HZ, 2020 WL 1855190 (D. Or., Apr. 13, 2020) ................................12, 15

*Kaiser Steel Corp. v. Mullins*,
  455 U.S. 72 (1982) .................................................................................................................. 12

*In re Malul*,
   614 B.R. 699 (Bankr. D. Colo. 2020) ...................................................................11

*Philos Techs. v. Philos & D, Inc.*,
   645 F.3d 851 (7th Cir.2011) ...................................................................................10

*Sensoria, LLC v. Kaweske*,
   2021 WL 103020 (D. Colo., Jan. 12, 2021) .....................................................12, 14

*Sensoria, LLC v. Kaweske*,
   581 F. Supp. 3d 1243 (D. Colo. 2022) .............................................10, 13, 14, 18

*Southern Pacific v. Interstate Com. Com*,
   200 U.S. 536 (1906) ...............................................................................................17

*Tracy v. USAA Cas. Ins. Co.*,
   No. 11-00487 ...........................................................................................................13

*United States v. $13,000.00 in U.S. Currency, 2007 Black Dodge Ram SRT
   Pickup, VIN 1D7HA18257S120375*,
   858 F. Supp. 2d 1194 (D. Colo. 2012) ...................................................................9

*United States v. Oakland Cannabis Buyers' Co-op.*,
   532 U.S. 483 (2001) .............................................................................................9, 15

*United Student Aid Funds, Inc. v. Espinosa*,
   559 U.S. 260 (2010) .................................................................................................9

**Statutes**

18 U.S.C. § 2(a) .............................................................................................................11

21 U.S.C. § 812 ...........................................................................................................5, 6

21 U.S.C. § 812(c)(10) .............................................................................................11, 12

21 U.S.C. § 841(a)(1) ...................................................................................................5, 11

21 U.S.C. § 846 ...........................................................................................................5, 11

21 U.S.C. § 881(a)(6) .....................................................................................................9

Controlled Substances Act .................................................................................... *passim*

Okla. Stat. tit. 63 § 427.1 *et seq.* ...................................................................................6

Okla. Stat. tit. 63 § 428 *et seq.* ......................................................................................6

**Other Authorities**

21 C.F.R. § 1308(d)(23) ................................................................................................11

21 C.F.R. § 1308(d)(58) ................................................................................................11

Federal Rule of Civil Procedure 60(b)(4) .......................................................................9

COME NOW, all Defendants in this action ("**Defendants**" or "**Redbird**"), by and through their counsel, and respectfully submit this Supplemental Brief in support of their Motion to Dismiss (Dkt. 60) on the grounds that Plaintiff Matthew Harrison's ("**Plaintiff**") claims are unenforceable as a matter of law because they conflict with the Controlled Substances Act ("**CSA**"), 21 U.S.C. §§ 812, 841(a)(1), and 846. In support of their motion, Defendants state as follows:

## I.    INTRODUCTION

Plaintiff faces an insurmountable legal hurdle. He seeks to enforce a judgment that requires the violation of federal law. Although some state laws regarding marijuana have changed, the CSA remains unchanged—explicitly prohibiting the manufacture, distribution, and possession of marijuana, as well as participation in such operations. This conflict presents a legal obstacle that Plaintiff's enforcement suit cannot overcome.

The U.S. Supreme Court holds that federal law preempts state efforts to legalize marijuana-related business transactions. Consistently, federal courts refuse to enforce contracts, business arrangements, and financial recoveries where the requested relief requires participation in or facilitation of activities that are illegal under federal law.

This dispute arises from Plaintiff's efforts to enforce a judgment involving financial entitlements from an alleged employment agreement with a marijuana-related enterprise. Because Plaintiff seeks to enforce a void judgment, and because Plaintiff's sought relief is inextricably intertwined with proceeds and interests derived from federally illegal conduct, this Court should dismiss Plaintiff's claims.

## II.    FACTUAL BACKGROUND

### A. The Redbird Entities' Business Is the Production, Distribution, and Sale of Cannabis

The Redbird entities operate solely within the cannabis industry (*e.g.*, cultivating, growing,

and distributing marijuana products) in Oklahoma.[1] Redbird's business structure includes entities that oversee aspects of its operations.[2] Redbird Business Group, LLC (now New Redbird Business Group LLC) is the umbrella entity that manages various Redbird-affiliated businesses.[3] Redbird Bioscience Oklahoma, LLC (now RB Bioscience Stilwell LLC) serves as the entity responsible for cannabis-related operations, including cultivation and production, while RB RealtyCo, LLC (now Redbird Realty LLC) holds real estate assets used by Redbird's businesses.[4]

Oklahoma state law permits medical marijuana operations, and Redbird operates within the state's regulatory framework.[5] However, federal law does not recognize such legality. Under the CSA, marijuana remains a Schedule I controlled substance, making its manufacture, distribution, and possession illegal.[6] Indeed, *all* Redbird's revenue derives from sales of marijuana, which are illegal.

Since its inception, Redbird expanded its operations by securing investment capital and forming strategic business partnerships.[7] To assist in those efforts, Redbird made the mistake of placing trust in Plaintiff, whose deception ultimately led Redbird to terminate its relationship with him.

---

[1] *See* Dkt. 2 at ¶ 29 ("The Redbird group of companies operate a medical marijuana business in Stilwell, Oklahoma").

[2] *See* Dkt. 82 at ¶ 6–7 (Declaration of Joe Byars in Support of Defendants' Corporate Disclosures).

[3] Dkt. 82 at ¶ 14–15.

[4] Dkt. 82 at ¶ 16–19 (describing the roles of each entity).

[5] *See*, *e.g.*, Okla. Stat. tit. 63 § 427.1 *et seq*. (establishing the framework for legalized use of marijuana in Oklahoma); and Okla. Stat. tit. 63 § 428 *et seq*. (establishing the framework for disposal of medical marijuana plant parts).

[6] 21 U.S.C. § 812 (establishing that marijuana is a Schedule I controlled substance).

[7] *See* Dkt. 82 at ¶ 6.

## B. Plaintiff's Deception of Redbird

Plaintiff was formerly employed at Brewer, Attorneys & Counselors ("**BAC**"). As a consultant under an engagement agreement between BAC and Redbird, Plaintiff was entrusted with providing advisory services and acting as a liaison between Redbird and BAC's managing partner, William A. Brewer III ("**Brewer**"). Redbird's founders, Bill Thurman and Nimesh Patel, relied on Brewer's legal guidance and understood Plaintiff to be Brewer's representative and agent—a role Plaintiff surreptitiously used for his own financial gain.

It is now known that by mid-2019, Plaintiff began orchestrating his transition from a consultant to a role as a senior executive at Redbird Bioscience. Redbird's leadership made one condition clear: Brewer's approval was required before Plaintiff could assume that role. Plaintiff repeatedly assured Redbird that he was keeping Brewer informed and had Brewer's approval.

By August 2019, Plaintiff finalized his own employment agreement (the "**Employment Agreement**", attached hereto as **Exhibit 1**) for Plaintiff to serve as CEO of Redbird Bioscience.[8] This agreement provided Plaintiff with a salary and equity in Redbird through Restricted Unit Grant (RUG) Agreements (attached hereto as **Exhibit 2**), which were classified as "profits interests."[9] Under the terms of the contract, Plaintiff was required to devote his full-time professional efforts to Redbird and act in the company's best interests.

In January 2020, Redbird determined that Plaintiff concealed from BAC and Brewer that he executed the agreement. Instead, after finalizing the Agreement, he falsely told Brewer that he was considering a job with Redbird but had not yet accepted a role. Upon learning that neither Brewer nor BAC had been informed, Redbird's leadership lost trust in Plaintiff and decided they could not

---

[8] Ex. 1.

[9] *See* Exs. 1–2.

proceed with him as CEO. On January 31, 2020, Redbird rescinded the Employment Agreement before Plaintiff formally assumed his role.

### C. Plaintiff's Prior Judgment and Current Enforcement Efforts

Despite never having formally served as CEO, Plaintiff brought claims against Redbird Business Group, LLC, Redbird Bioscience Oklahoma, LLC, and RB RealtyCo, LLC (the "**Judgment Debtors**") in the Eastern District of Oklahoma in the cause *Redbird Business Group, LLC et al. v. Harrison*, 6:20-CV-00098-JAR (the "**Original Action**"), asserting causes of action for (1) breach of contract; (2) breach of good faith and fair dealing; (3) promissory estoppel; and (4) breach of guaranty. The case resulted in a judgment for Plaintiff on his breach of contract and breach of guaranty claims including an award of damages along with specific performance requiring the assignment of unit grants for equity shares.[10]

Specifically, the judgment in question ("**Amended Judgment**")[11], entered on March 27, 2024, awarded Plaintiff damages, attorneys' fees, costs, and pre-judgment and post-judgment interest, against Redbird Business Group, LLC, Redbird Bioscience Oklahoma, LLC, and RB RealtyCo, LLC. The Amended Judgment ordered:

> Damages are awarded in the Counterclaimant's favor in the amount of $437,500.00 and Counterclaimant is awarded specific performance in the assignment of the unit grants in the percentages set out in the Findings of Fact and Conclusions of Law entered on this date.[12]

Now, Plaintiff seeks to enforce this judgment against additional Defendants, including individual owners and affiliated business entities, by alleging veil-piercing and fraudulent transfer theories. However, Plaintiff's enforcement efforts herein are legally bankrupt. Enforcement is not

---

[10] Dkt. 2 at ¶ 2.

[11] Attached hereto as **Exhibit 3**.

[12] Ex. 3.

possible because Plaintiff now seeks relief *in federal court* for the enforcement of a judgment predicated on his involvement *in a federally illegal business*. Such action may not be enforced by this Court.

## III.   ARGUMENT AND AUTHORITIES

### A.  The Judgment is Void as a Matter of Law

A judgment that is void is a legal nullity—carries no force or effect and may be set aside at any time.[13] Under Federal Rule of Civil Procedure 60(b)(4), a judgment is void if "the court which rendered it lacked jurisdiction of the subject matter, or of the parties, or acted in a manner inconsistent with the due process of law."[14] Because subject matter jurisdiction cannot be waived and must exist at all stages of litigation, a judgment entered without jurisdiction is inherently void and subject to collateral attack at any time.[15]

Here, the judgment that Plaintiff seeks to enforce is void as a matter of law because it is based on an employment agreement and other financial terms derived from a cannabis-related business, which remains illegal under federal law. Federal courts lack jurisdiction to enforce rights that arise from illegal conduct.[16] The CSA makes it unlawful to manufacture, distribute, or possess marijuana, and federal courts will not enforce contracts or property rights predicated on such illegal activity.[17]

---

[13] *United Student Aid Funds*, *Inc. v. Espinosa*, 559 U.S. 260, 270 (2010).

[14] *Alford v. Cline*, 2017 WL 2473311, at *2 (10th Cir. June 8, 2017) (unpublished) (quoting *United States v. Buck*, 281 F.3d 1336, 1344 (10th Cir. 2002)).

[15] *Id.*

[16] *United States v. Oakland Cannabis Buyers' Co-op.*, 532 U.S. 483, 497 (2001) (holding that "a court sitting in equity *cannot 'ignore the judgment of Congress*, deliberately expressed in litigation.") (quoting *Virginian R. Co. v. Railway Employees*, 300 U.S. 515, 551 (1937) (emphasis added).

[17] Under the CSA, "no property right shall exist" for all moneys, negotiable interests,

Because the underlying judgment is inextricably tied to an illegal cannabis business, the court in the Original Action lacked jurisdiction to enter or enforce it.[18] As such, the judgment is void *ab initio* and must be set aside.[19]

### 1. *A Court May Sua Sponte Vacate a Judgment That Is Void On Its Face*

Courts have the authority to *sua sponte* vacate a judgment that is void on its face.[20] A void judgment is treated as a jurisdictional defect, which courts are obligated to recognize and correct—even in the absence of a formal motion.[21] Indeed, "[a] judgment entered against a defendant over whom the court had no jurisdiction is void, and **no court has the discretion to refuse to vacate** that judgment once it recognizes its lack of jurisdiction."[22]

### B. The Judgment is Unenforceable in This Court Because It Violates Federal Law

Even if the judgment is not void for lack of jurisdiction (it is), its enforcement remains

---

securities, or other things of value that were used to facilitate violation of the CSA. 21 U.S.C. § 881(a)(6); *see also United States v. $13,000.00 in U.S. Currency, 2007 Black Dodge Ram SRT Pickup, VIN 1D7HA18257S120375*, 858 F. Supp. 2d 1194, 1199 (D. Colo. 2012) (holding currency that is the proceeds of drug trafficking is "traceable" to the sale of a controlled substance where it can be traced "to drug trafficking generally," and there is no need to trace the currency to a particular drug transaction.).

[18] *See Sensoria, LLC v. Kaweske*, 581 F. Supp. 3d 1243, 1259 (D. Colo. 2022) ("The Court may not vindicate equity in or award profits from a business that grows, processes, and sells marijuana.").

[19] *Bartch v. Barch*, 111 F.4th 1043, 1044 (10th Cir. 2024) ("If voidness is found, relief is . . . mandatory.").

[20] *Daigle v. Shell Oil Co.*, 972 F.2d 1527, 1539 (10th Cir. 1992) ("[O]ur responsibility to ensure even *sua sponte* that we have subject matter jurisdiction before considering a case differs from our discretion to eschew untimely raised legal theories which may support that jurisdiction.")

[21] *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006) (holding that courts "have an independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party."); *see also Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee,* 456 U.S. 694, 701 (1982) ("The rule, springing from the nature and limits of the judicial power of the United States is inflexible and without exception, which requires this court, of its own motion, to deny its jurisdiction . . . .").

[22] *Philos Techs. v. Philos & D, Inc.*, 645 F.3d 851, 854–55 (7th Cir.2011).

legally impossible in this Court.[23] A federal court cannot compel compliance with an order that contravenes federal law; here, enforcing Plaintiff's judgment would directly contravene the CSA.[24]

### 1. The Controlled Substances Act Prohibits the Manufacture, Distribution, and Possession of Marijuana

A federal court, even one sitting in diversity, as here, cannot issue a judgment in side of conduct which violates federal law.[25] It is illegal under the CSA to manufacture, distribute, and possess with intent to distribute marijuana, a Schedule I controlled substance; or to attempt to carry out these activities; or to aid and abet an attempt to do so.[26] The United States Supreme Court clarified that the federal government's designation of marijuana as a controlled substance supersedes contrary state law.[27]

Defendants' business activities are the operation of cannabis dispensary and delivery services, which violate federal law. Therefore, Defendants' business and all its revenues directly

---

[23] *See, e.g.*, *In re Malul*, 614 B.R. 699, 706 (Bankr. D. Colo. 2020) (emphasis added) (stating that "Of course, bankruptcy laws and bankruptcy courts are purely creatures of federal law. Accordingly, bankruptcy courts have consistently dismissed cases where debtors engaged in ongoing CSA violations, or where a debtor's reorganization efforts *depend on funds that can be considered proceeds of CSA violations*.").

[24] *See, e.g.*, *Bassidji v. Goe*, 413 F.3d 928, 936 (9th Cir. 2005) (emphasis added) (holding in case unrelated to marijuana that "courts will not order a party to a contract to ***perform an act that is in direct violation of a positive law*** directive, even if that party has agreed, for consideration, to perform that act").

[25] *Gonzales v. Raich*, 545 U.S. 1, 29 (2005) ("The Supremacy Clause unambiguously provides that if there is any conflict between federal and state law, federal law shall prevail.")

[26] *See* 21 U.S.C. § 812(c)(10) (listing marijuana as a Schedule I controlled substance); 21 U.S.C. § 841(a)(1) (criminalizing the manufacture, distribution and possession with intent to distribute of controlled substances in the absence of authorization under the CSA); 21 U.S.C. § 846 (criminalizing conspiracies and attempts to violate the CSA); 18 U.S.C. § 2(a) (criminalizing aiding and abetting violations of federal criminal law); 21 C.F.R. § 1308(d)(23) (listing marijuana as a Schedule I controlled substance); 21 C.F.R. § 1308(d)(58) (listing marijuana extract as a Schedule I controlled substance).

[27] *Raich*, 545 U.S. at 29 (holding that the CSA continues to apply full force even in states that have de-criminalized marijuana).

flow from violations of federal law.

### 2. Federal Courts Do Not Enforce Rights That Are Based on Federally Illegal Transactions

Federal courts will not enforce rights that violate federal law. If any principle of law is settled, it is that "no [federal] court will lend its assistance in any way towards carrying out the terms of an illegal contract."[28] This principle also bars federal courts from enforcing orders of the court that require illegal activity.[29]

Although marijuana distribution has been legalized in a number of states, including Oklahoma, it is not legal under the CSA.[30] Regardless of whether state law permits the distribution of cannabis, the alleged contract here is unenforceable because federal law prohibits **_all_** marijuana-related activities. As such, federal courts must decline to enforce contracts (or judgments derived from contracts) that have as their object cultivating, manufacturing, or distributing marijuana because such an order would require illegal activity.[31] This is especially true where, as *here*,

---

[28] *Kaiser Steel Corp. v. Mullins*, 455 U.S. 72, 77 (1982); *see also Higgins v. McCrea*, 116 U.S. 671, 686 (1886) ("No court will lend its aid to a man who founds his cause of action upon an … illegal act."); *Bassidji v. Goe*, 413 F.3d 928, 936 (9th Cir. 2005) (Courts will not order the commission of an act in violation of federal law).

[29] *Kaiser*, 455 U.S. at 83 ("[A] federal court has a duty to determine whether a contract violates federal law before enforcing it."); *Head Kandy, LLC v. McNeill*, No. 23-CV-60345, 2024 WL 4502227, at *3 (S.D. Fla. Oct. 16, 2024) (stating that "[t]he Court should not—and cannot—enforce an order or contract provision that is illegal.").

[30] 21 U.S.C. § 812(c)(10).

[31] *See, e.g., 1240 S. Bannock, LLC v. Siem*, No. 2:21-cv-00183, 2022 WL 2161386 at *5–6 (W.D. Mich. May 27, 2022) (court refused to enforce plaintiff's contract for the purchase of real estate to be used for the manufacture and retail sale of marijuana); *Sensoria, LLC v. Kaweske*, 2021 WL 103020, at *6 (D. Colo., Jan. 12, 2021) (dismissing investor's allegations in lawsuit based on the pleadings in the complaint against owners of a company holding company that owned and operated marijuana retail and manufacturing entities); *J. Lilly, LLC v. Clearspan Fabric Structures International, Inc.*, No. 3:18-cv-01104-HZ, 2020 WL 1855190, at *11–12 (D. Or., Apr. 13, 2020) (dismissing claim for lost profits from the sale of marijuana arising out of alleged breach of greenhouse lease with option to purchase); *Bart St. III v. ACC Enters., LLC*, No. 2:17-cv-00083-

Plaintiff does not and cannot allege that the judgment can be paid from non-illegal source.[32]

The case *Sensoria, LLC v. Kaweske,*[33] involved a lawsuit filed by investors in a cannabis company who alleged that the principal had engaged in a "shell game" to siphon assets from the business. The court applied the illegality doctrine and determined that it could not grant relief for an alleged scheme involving a business that is illegal under federal law (*i.e.*, a cannabis venture).[34] As a result, the *Sensoria* court was compelled to dismiss the vast bulk of the claims asserted by the investors.[35]

In *Polk v. Gontmakher,* plaintiff sued his former partner in a marijuana growing business, alleging he was entitled to an ownership interest as well as past and future profits.[36] The court held that federal law precludes enforcement of the agreement, because the production, distribution, and

---

GMN-VCF, 2018 WL 4682318, at *5 (D. Nev. Sept. 27, 2018) (enforcing terms of promissory notes securing loans for marijuana-related businesses that required the loan funds to be spent on legal acts and holding that contract provision requiring the use of funds for operating capital for marijuana cultivation was unenforceable because it violated federal law); *Hemphill v. Liberty Mut. Ins. Co.*, No. 10-861 LH/RHS, 2013 WL 12123984, at *2 (D.N.M. Mar. 28, 2013) (granting summary judgment to defendant on ground that federal court sitting in diversity could not require insurance company to pay plaintiff's future medical expenses for medical marijuana use because to do so would violate federal law and policy); *Tracy v. USAA Cas. Ins. Co.*, No. 11-00487 LEK-KSC, 2012 WL 928186, at *13 (D. Haw. Mar. 16, 2012) (declining to order home insurer to pay for insured's claim for theft of marijuana plants because "Plaintiff's possession and cultivation of marijuana, even for State-authorized medical use, clearly violates federal law").

[32] Despite Plaintiff alleging in his Supplemental Brief (Dkt. 113) that "Defendants possess assets outside of the marijuana context," Plaintiff fails to specify any assets untainted by federally illegal marijuana revenue that could satisfy his requested relief, or prove any legitimate basis for him to recover those assets to satisfy the void judgment. The key issue is not the nature of Defendants' broader asset pool, but rather the origin of the ***specific financial interests at issue in the judgment***.

[33] 581 F.Supp.3d 1243 (D. Colo. Jan. 24, 2022).

[34] *Id.* at **7–12 (discussing limitations on relief imposed by CSA and concluding that "the Court may not vindicate equity in or award profits from a business that grows, processes, and sells marijuana").

[35] *Id.* at **21–22.

[36] 2019 WL 4058970, at *2 (W.D. Wash. Aug. 28, 2019).

sale of marijuana remains illegal under the CSA.[37] Just as in the instant case, the plaintiff in *Polk* sought an ownership interest in and a share of the profits from a marijuana business.[38] The court explicitly found that awarding any such relief would contravene federal law.[39]

Simply put, federal courts may not grant relief that acknowledges or vindicates equity in or award profits from a business that grows, processes, or sells marijuana.[40] The cases addressing this issue have largely focused on the remedy being sought and, reading the cases as a whole, the relief available to plaintiffs in such cases is generally limited to the return of their capital investments in the illegal venture[41] or repayment of any loans made to the venture.[42] Because Plaintiff's claims are to enforce a judgment that seeks more than mere reimbursement, but requires the recognition of profits from federally illegal activities, this Court must decline to enforce them as a matter of law.

Plaintiff could have brought his claims for breach of contract against Defendants in a forum where marijuana is legal and where contracts with marijuana-related entities are enforceable. He did not. Plaintiff, *now*, does not bring this case in Oklahoma state court, but rather in federal court.[43] Thus, Plaintiff cannot claim that the Court should disregard the issue of the judgment's

---

[37] *Id.*

[38] *Id.*

[39] *Id.*

[40] *Sensoria*, 2021 WL 103020 at *6 (citing *In re Malul*, 614 B.R. 699 (D. Colo. 2020); *Polk*, 2020 WL 2572536 at *2; *J. Lilly, LLC.*, 2020 WL 1855190, at *11–12 (D. Or. Apr. 13, 2020)).

[41] *Sensoria*, 2021 WL 103020.

[42] *Bart Street III v. ACC Enterprises, LLC*, 2020 WL 1638329 at *9 (D. Nev. Apr. 1, 2020) (dismissing an unjust enrichment claim to the extent that it would allow the investor to profit from the cultivation, possession, and sale of marijuana; but allowing it to proceed on a breach of contract claim to recover funds lent to the venture).

[43] *See Sensoria, LLC*, 581 F.Supp.3d at 1259 (noting that illegality defense in action brought

voidness simply because Oklahoma state law permits marijuana-related business activities. By choosing to litigate in federal court, Plaintiff has purposefully availed himself to federal law, which bars his ability to enforce an order requiring violation of such law.[44]

### 3. Plaintiff's Judgment Is Tied to Profits and Assets Derived from a Marijuana Business

Plaintiff has not—and cannot—demonstrate that his requested relief can be satisfied through legally obtained assets. His entire claim for enforcement is predicated on his alleged entitlement to equity and financial interests in Redbird's marijuana business.[45] In such circumstances, courts have refused to enforce judgments where relief derives from continued violation of the CSA.[46] Ultimately, "[r]elief may not be in a form that endorses violating the CSA. It can neither require an act that would violate the CSA **nor award monetary damages paid from a marijuana asset or income stream**."[47]

Further, the court's order preventing the Judgment Debtors from paying out, transferring, mortgaging, alienating, concealing, encumbering, or making any other disposition of the Judgment Debtors' money or property effectively compels Redbird to continue operating its federally illegal business.[48] This order prevents Defendants from winding down their operations or obtaining other

---

by investors in a cannabis company was "a function of Plaintiffs' choice of venue. ***Plaintiffs filed this lawsuit in federal court, not Colorado state court in which the illegality issue possibly may play a lesser role***. By filing suit in federal court, it was Plaintiffs themselves, and not Defendants, who deprived them avenues of relief and '"choses in action."'").

[44] *United States v. Oakland Cannabis Buyers' Co-op.*, 532 U.S. 483, 497 (2001).

[45] *See* Ex. 3 at 2.

[46] *See, e.g., J. Lilly, LLC*, 2020 WL 1855190, at *12 (finding that the CSA precluded the court from awarding plaintiff lost profits as damages for the breach of a contract to build a growhouse).

[47] *Id.*

[48] *See* Court's Order Granting Asset Hearing from the Original Action, attached hereto as

non-marijuana-based assets. Instead, it freezes all assets and prohibits their disposition, forcing Defendants into an untenable position where compliance with the Court's directives necessitates continued participation in the very illegal activities prohibited by federal law. Such a mandate further underscores the unenforceability of the judgment within this legal framework.

When Plaintiff asks this Court to pierce the corporate veil and otherwise hold that Redbird's business operations included fraudulent transfers, Plaintiff is actually asking the Court to recognize and safeguard his rights to profit from Redbird's past and continued CSA violations. The unavoidable reality is that anything Plaintiff alleges he is entitled to gain from the Judgment Debtors is tied to and derived from violations of federal law.[49] Therefore, enforcement of a judgment that seeks to benefit Plaintiff for his illegal participation in the Redbird enterprise cannot be upheld by this Court.

### 4. The Judgment Enforcement Context Does Not Excuse CSA Violations

Plaintiff contends that enforcing a judgment differs from enforcing an illegal contract.[50] However, this distinction is immaterial where the underlying financial entitlements originate from federally unlawful conduct. Courts have consistently held that federal law prohibits awarding relief

---

**Exhibit 4**. ("IT IS FURTHER ORDERED THAT THE JUDGMENT DEBTORS SHALL BE AND ARE HEREBY ORDERED NOT TO PAY OUT, TRANSFER, MORTGAGE, ALIENATE, CONCEAL, ENCUMBER, OR MAKE ANY OTHER DISPOSITION OF ANY OF JUDGMENT DEBTORS' MONEY OR PROPERTY, EITHER REAL OR PERSONAL, NOT EXEMPT BY LAW, PENDIGN THE HEARING AND FURTHER ORDER OF THE COURT.")

[49] *See Bartch*, 111 F.4th at 1062 n. 22 (observing that "efforts to sell [Defendants'] equity would depend in part on [Defendants'] success in selling marijuana."); *Polk* 2020 WL 2572536 (asking, rhetorically, how the plaintiff "anticipates [defendant marijuana company] will generate these future profits" and concluding that an award of future profits from marijuana business would require a violation of the CSA).

[50] Dkt. 113 at 8.

that derives from proceeds of illicit activity. [51] Here, the judgment Plaintiff seeks to enforce is not merely a neutral monetary recovery; it is an attempt to benefit from profits and ownership interests tied to marijuana-related business operations.

Therefore, Plaintiff's reliance on *Bartch v. Barch*[52] is misplaced. In fact, the case underscores why enforcement of Plaintiff's judgment would be legally improper under federal law. The Tenth Circuit in *Bartch* did not hold that all monetary judgments arising from cannabis businesses are ***automatically*** enforceable in federal court, nor did it suggest that a court must disregard the CSA when determining enforcement issues.[53] Rather, the court in *Bartch* noted that enforcing a judgment that requires continued participation in activities prohibited by the CSA is void.[54]

The *Bartch* ruling rested on the fact that the payment source for the judgment was unclear— the Tenth Circuit remanded for further factual development precisely because it was unknown whether enforcement would require CSA violations.[55] The court explicitly declined to rule on the enforceability of a judgment where the payment source had not been established:

> "In sum, the judgment enforcement order does not specifically order Mackie and Trellis to engage in marijuana activities that would violate the CSA, ***but compliance with the order may effectively require them to do so***."[56]

---

[51] *Head Kandy, LLC v. McNeill*, No. 23-CV-60345, 2024 WL 4502227, at *3 (S.D. Fla. Oct. 16, 2024) (stating that "[t]he Court should not—and cannot—enforce an order or contract provision that is illegal."); *Southern Pacific v. Interstate Com. Com*, 200 U.S. 536, 551 (1906) ("If the order be not a lawful one, the court is without power to enforce it.").

[52] *Bartch v. Barch*, 111 F.4th 1043 (10th Cir. 2024).

[53] *Id.* at 1063.

[54] *Id.*

[55] *Id.* at 1062.

[56] *Id*. (emphasis added) (acknowledging *Sensoria*'s applicability may bar relief after remand).

By contrast, this case presents no such factual ambiguity. The only assets available to satisfy Plaintiff's judgment against Judgment Debtors are directly tied to Redbird's marijuana business. Unlike in *Bartch*, where the court left open the possibility that the debtor could satisfy the judgment from assets detached from the distribution of marijuana, here, the requested relief ***necessarily involves proceeds derived from federally illegal activities***.[57]

Thus, *Bartch* does not support Plaintiff's argument that enforcement of his judgment is a foregone conclusion. The court recognized that an order compelling a party to sell or monetize its equity in a cannabis business would implicate serious federal illegality concerns, requiring additional scrutiny before enforcement could proceed.[58] At least one judge from the Tenth Circuit would have invalided the Order of Judgment entirely, leaving the *Bartch* plaintiff with nothing.[59]

The situation here is more clear-cut than in *Bartch*. Even if Defendants hold assets unrelated to marijuana, that does not cure the fatal defect in Plaintiff's claims. The Judgment explicitly mandates the compensation for equity interests—direct ownership in a cannabis business—rather than merely seeking a monetary distribution. The Judgment states on its face, "Damages are awarded in the Counterclaimant's favor in the amount of $437,500.00, and ***Counterclaimant is awarded specific performance in the assignment of the unit grants*** in the percentages set out in the Findings of Fact and Conclusions of Law."[60] Enforcement of this Judgment would require the Court to compel the transfer of ownership interest that requires active participation in an illegal enterprise—precisely the type of CSA violation the Tenth Circuit warned against in *Bartch*.

---

[57] *Sensoria*, 581 F.Supp.3d at 1260 (holding "the Court may not vindicate equity or award profits from a business that grows, processes, and sells marijuana."); *see also* Ex. 3 (Amended Judgment granting ownership interest in the Judgment Debtors).

[58] *Id.* at 1063–64.

[59] *Id.* at 1067.

[60] Ex. 3 at 2.

Plaintiff cannot circumvent federal illegality concerns by pointing to alternative funding sources; the issue is not one of liquidity but of the fundamental legality of the relief sought. The Judgment that Plaintiff seeks to enforce advances Plaintiff's participation in illegal activity under the CSA and, therefore, is void on its face.

## IV.    CONCLUSION

For the reasons stated above, Defendants respectfully request that their Motion to Dismiss be granted, and Plaintiff's Complaint should be dismissed, in its entirety.

Dated: February 10, 2025                    Respectfully submitted,

By: */s/ Polina M. DeClue*
Polina M. DeClue
BREWER, ATTORNEYS & COUNSELORS
1717 Main Street, Suite 5900
Dallas, Texas 75201
Phone: (212) 489-1400
Fax: (212) 751-2849
pmd@brewerattorneys.com

-and

Michael T. Maloan-OBA# 15097
FOLIART, HUFF, OTTAWAY & BOTTOM
201 Robert S. Kerr Avenue, 12th Floor
Oklahoma City, Oklahoma 73102
Telephone: (405) 232-4633
Fax: (405) 232-3462
michaelmaloan@oklahomacounsel.com

**ATTORNEYS FOR DEFENDANTS**

## CERTIFICATE OF SERVICE

I hereby certify that on this 10th day of February 2025, I electronically transmitted the

attached document to the Clerk of Court using the ECF System for filing and transmittal of a Notice

of Electronic Filing to the following ECF registrants:

R. Trent Shores
Adam Doverspike
GABLEGOTWALS
110 North Elgin Avenue, Suite 200
Tulsa, Oklahoma 74120
(918) 595-4800
tshores@gablelaw.com
adoverspike@gablelaw.com

Luke A. Connelly
WINSTON & STRAWN
200 Park Avenue
New York, New York 10166
(212) 294-6882
lconnell@winston.com

*/s/ Polina DeClue*
Polina DeClue